# IN THE COURT OF APPEALS OF IOWA

No. 15-0077
Filed March 23, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAUNTE DOMINIQUE BULLOCK,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

A defendant appeals following his resentencing, claiming the district court failed to consider all of the mitigating factors. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Alexandra Link, Assistant Attorneys General, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

Daunte Bullock appeals the sentence imposed by the district court following a resentencing hearing held after the supreme court declared the imposition of mandatory minimum sentences against youthful offenders unconstitutional. *See State v. Lyle*, 854 N.W.2d 378, 402 (Iowa 2014) ("[W]e hold a mandatory minimum sentencing schema . . . violates article I, section 17 of the Iowa Constitution when applied in cases involving conduct committed by youthful offenders."). Bullock was sixteen years old when he committed second-degree sexual abuse and first-degree burglary, both class "B" felonies, and following his conviction, he was initially sentenced to twenty-five years in prison for each conviction, to be served consecutively. In addition, a mandatory minimum sentence was imposed on his conviction for second-degree sexual abuse.[1]

**I. *Miller* Factors.**

In this appeal, Bullock asserts the resentencing court did not fully apply the factors articulated by the U.S. Supreme Court in *Miller v. Alabama*, 132 S. Ct. 2455, 2468 (2012), which the *Lyle* court held were the factors to consider when

---

[1] Bullock was also convicted of first-degree kidnapping in a separate case and initially sentenced to life in prison without the possibility of parole. That sentence was modified in 2011 to life in prison with the possibility of parole pursuant to the U.S. Supreme Court's ruling in *Graham v. Florida*, 560 U.S. 48, 82 (2010) (holding the imposition of a sentence of life without the possibility of parole on juveniles for nonhomicide offenses violates the Eighth Amendment). Bullock requested a second resentencing in the kidnapping case in conjunction with the resentencing he requested in the sexual abuse and burglary case. A joint hearing was held where the court addressed the sentences imposed for both the sexual abuse and burglary convictions, and the kidnapping conviction. However, on appeal, Bullock only challenges the court's resentencing decision on the sexual abuse and burglary convictions.

resentencing a youthful offender. *See Lyle*, 854 N.W.2d at 404 n.10. These factors include:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the particular "family and home environment" that surround the youth; (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime; (4) the challenges for youthful offenders in navigating through the criminal process; and (5) the possibility of rehabilitation and the capacity for change.

*Id.* (citing *Miller*, 132 S. Ct. at 2468). "When a sentence imposed by a district court falls within the statutory parameters, we presume it is valid and only overturn for an abuse of discretion or reliance on inappropriate factors." *State v. Hopkins*, 860 N.W.2d 550, 554 (Iowa 2015). Our review is de novo to the extent Bullock claims his new sentence is unconstitutional in light of his claim the court did not consider all of the *Miller* factors during the resentencing hearing. *See Lyle*, 854 N.W.2d at 382.

In resentencing Bullock, the court recited the *Miller* factors and then stated:

> There's no question that when you committed both of these crimes, you were sixteen years of age. You were not an adult. You were a child.
> At that time, you had family here in the area. You had basically disregarded any parental supervision at that time and were acting out on your own. You tell me now that at least part of the problems that may have affected you were that you had been sexually abused as a small child and that had never been dealt with, and that is a circumstance I should take into consideration given the fact that the crimes involved were sexual-abuse type offenses.
> The next factor would be the circumstances surrounding the offense, and I want to come back to that last.
> Then number—the fourth factor, or the incompetencies of youth, about how you would have dealt with the whole set of

circumstances, and in your case, I don't know if that has as much impact, because I don't know whether confessions were necessarily what would have led to the situation. Also, we don't have a guilty plea. Sometimes youngsters plead guilty maybe not fully understanding the consequences. In both of your cases, you had jury trial, and the juries found you guilty, and by the time you had your second trial, I think you were twenty-two years old because of the time that had gone by with that since the State didn't file the charge right after the events took place.

And then also, the possibility of rehabilitation. Your first thirteen years in prison showed almost no possibility for rehabilitation. The fact that you had, I think, seventy-three disciplinary violations considered to be major reports during your fourteen years in prison would be a demonstration that you were not looking at being rehabilitated, and I suppose that's because when you went into prison you thought, I'm not getting out of here, what do I care, and that's basically what you told me today.

After you were resentenced in 2011, your behaviors got a little bit better, because I look at that list of disciplinary infractions, and you still had some. You were still not complying with all of the rules after 2011, but the serious nature of them changed.

Since you were resentenced, you had nine violations, disciplinary actions, in the institution, but they were not the kind that gave you lengthy detain, disciplinary detention, or great loss of earned time. They were disruptive conduct, having unauthorized money, theft of a DVD player; that was kind of a serious one, but you still had some problems. That shows a lack of possibility of rehabilitation, yet all of these classes that you're now showing me that you've done basically since that resentencing show that you are working towards rehabilitation, so you've got some factors going both ways on that.

So if I were just to look at those factors, I think that you have made some progress since 2011 when you suddenly realized you might get out of prison before you die, and so you wanted to start changing your ways, and you started taking advantage of some opportunities, and that's good, and that shows me that there is a possibility for you to be rehabilitated.

If you had asked me that when you were here in 2011 and I removed the mandatory no possibility of parole, I wouldn't have thought you would have been rehabilitated because of the problems you were having in prison, but at least there's a hope for that now based upon what you've done.

But that brings us back to the circumstances surrounding the offenses. These two cases were incredibly serious. They still are incredibly serious.

It does trouble me that the Supreme Court in these rulings that they have in talking about juveniles have seemed to take an opinion that sometimes teenagers were involved in crimes because of peer pressure or it was school-yard pranks, they said, that just rose to the level of a forcible felony and required prison. They kind of missed the boat with crimes like this. This crime was solely your act, both of these crimes. You didn't have any peer pressure causing you to do this. No one enticed you to do it. As far as I can tell, these victims were random victims that you just picked not because of anything that they really had done to you personally, and in taking into consideration the life sentence, the escalation of your behaviors.

. . . .

I will tell you, Mr. Bullock, if I had been asked this question in 2011, there would have been no question about what I would have done. I would have maintained the minimum sentence because of your horrible performance in prison, but I take you at your word today, that when you went to prison, you had to puff up to protect yourself, or that you thought you were a lost cause because you were never going to get out, so you didn't care, and, consequently, you misbehaved, and the fact that you now have some hope of getting out has caused you to take advantage of some opportunities, and you're right, SOTP [Sex Offender Treatment Program] is what you need to get into, and that's how the Department of Corrections and the Board of Parole will know when you're ready to get out of prison.

If you can successfully complete SOTP, acknowledge responsibility for your acts, acknowledge what brought you to do those things to another person, and can learn the skills on how not to do it again, then they'll probably be comfortable recommending a parole.

If you can't successfully complete that, then they're probably not going to recommend parole, and they'll have the option to not parole you given the fact you have a life sentence.

But I believe that's enough of a safety net for society; consequently, I think that the mandatory or the required minimum before you're eligible for parole should be lifted, so that the DOC can have the option of getting you into SOTP if they want to right now. That will be the tale-tell. If you can succeed in that, then maybe you are ready to be returned to society. If you can't, maybe you're not.

So the sentences in these cases will be—first of all, in FECR001942, the sentence will remain as it was previously imposed, except I will lift any minimum sentence to be served before you're eligible for parole . . . .

Despite the court's extensive findings, Bullock claims the court failed to consider several of the *Miller* factors, specifically, his age and features of youthful behavior including a psychological evaluation done two years before the offenses at issue[2]; his family and home environment including his abandonment by his biological father, his lack of stable residence, and the substance abuse and domestic violence perpetrated by his step-father; and his challenges in navigating the criminal process. Upon our review of the record, we conclude the court appropriately considered all of the *Miller* factors when resentencing Bullock. The district court need not mention every factor Bullock asserted in mitigation of his sentence. *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995) ("We do not believe however, it is required to specifically acknowledge each claim of mitigation urged by a defendant. Furthermore, the failure to acknowledge a particular sentencing circumstance does not necessarily mean it was not considered."). We find no abuse of discretion in the district court's resentencing decision.

## II. Court-Appointed Attorney Fees.

Bullock also claims the court erred in ordering him to pay his court-appointed attorney fees in excess of what is permitted under the Iowa Administrative Code rule 493-12.4 (1999) and also without considering his reasonable ability to pay. The State asserts the law in effect when Bullock was

---

[2] We note neither party brought this psychological evaluation to the attention of the court during resentencing.

initially sentenced for this crime in 2000, as modified in 2002,[3] permitted the assessment of court-appointed attorney fees with no cap on the amount. In addition, the State claims Bullock should file a petition for reconsideration under Iowa Code section 910.7 (2015)[4] to the extent he claims he is unable to afford the restitution amount. "Our review of challenges to the illegality of a sentence is for errors at law." *Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001).

The crimes in question were committed in 1999. At that time criminal defendants could be assessed court-appointed attorney fees as part of a restitution order, to the extent the defendant had the ability to pay, pursuant to Iowa Code section 910.2 (1999)—"In all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgement of conviction is rendered, the sentencing court shall order that restitution be made by each

---

[3] The initial judgment and sentence was imposed in August 2000, but a subsequent appeal resulted in a remand for resentencing due to the district court's error in merging the sexual abuse and burglary convictions. *State v. Bullock*, 638 N.W.2d 728, 735 (Iowa 2002) ("We vacate the court's sentence and remand for entry of a judgment of conviction on both burglary in the first degree and sexual abuse in the second degree, and for sentencing on both convictions."). The initial sentence ordered Bullock to reimburse $12,973.75 in court-appointed attorney fees. Following Bullock's resentencing in April 2002, an additional $275.00 was imposed for a total assessment of $13,248.75 in court-appointed attorney fees, as also shown in the November 19, 2002 supplemental order.

[4] This code provision provides, in part:

> 1. At any time during the period of probation, parole, or incarceration, the offender or the office or individual who prepared the offender's restitution plan may petition the court on any matter related to the plan of restitution or restitution plan of payment and the court shall grant a hearing if on the face of the petition it appears that a hearing is warranted.
>
> 2. After a petition has been filed, the court, at any time prior to the expiration of the offender's sentence, provided the required notice has been given pursuant to subsection 3, may modify the plan of restitution or the restitution plan of payment, or both, and may extend the period of time for the completion of restitution.

Iowa Code § 910.7.

offender . . . to the extent that the offender is reasonably able to pay, for . . . court-appointed attorney's fees . . . ." Also in 1999, the legislature passed a law requiring the State Public Defender to establish fee limitations for particular categories of cases for services rendered by court-appointed attorneys to indigents. *See* Iowa Code § 13B.4(4)(a) (Supp. 1999). The State Public Defender established the limitations in Iowa Administrative Code rule 493-12.4 (1999). In 1999, the fee limitation for class "B" felonies was $3000. Iowa Admin. Code r. 493-12.4 (1999).[5] However, it was not until July 1, 2002, that these fee limitations were applied to limit the amount that could be assessed against an indigent defendant for restitution. *See* 2002 Iowa Acts ch. 1067, § 19 ("When determining the amount of restitution for each case under section 910.3, the expense of the public defender shall be calculated at the same hourly rate of compensation specified under section 815.7. However, the expense of the public defender shall not exceed the fee limitations established in section 13B.4.") (codified at Iowa Code § 815.14 (2003)); *see also* Iowa Code § 3.7.

The court-appointed attorney fees were assessed as part of Bullock's restitution in the sentencing order filed April 8, 2002. Thus, the fee caps were not applicable to Bullock at the time the crime was committed in 1999 or when the initial sentence was modified in 2002. The restitution amount imposed on Bullock in 2002 was valid under the then-applicable law.

Bullock was resentenced in 2014 after the supreme court declared the imposition of mandatory minimums on youthful offenders unconstitutional under

---

[5] The attorney-fee limitations have been subsequently relocated to Iowa Administrative Code r. 493-12.6.

article I, section 17 of the Iowa Constitution. *See Lyle*, 854 N.W.2d at 402. However, the resentencing hearing was to address only whether the minimum sentence should be imposed on Bullock. *See id.* at 404 n.10 ("To avoid any uncertainty about the parameters of the resentencing hearing and the role of the district court on resentencing, we reiterate that the specific constitutional challenge raised on appeal and addressed in this opinion concerns the statutory imposition of a minimum period of incarceration without parole equal to seventy percent of the mandatory sentence. . . . In order to address the issue raised in this appeal, the district court shall conduct a hearing in the presence of the defendant and decide, after considering all the relevant factors and facts of the case, whether or not the seventy percent mandatory minimum period of incarceration without parole is warranted as a term of sentencing in the case."). No other aspect of Bullock's sentence, including the requirement that he pay restitution for court-appointed attorney fees, was up for reconsideration by the district court.[6]

Because it was legal when imposed and because it remained in effect despite the resentencing hearing under *Lyle*, we affirm Bullock's sentence requiring him to pay $13,248.75 in court-appointed attorney fees. To the extent Bullock claims he does not have the reasonable ability to pay the restitution ordered in 2002, he can petition the district court for a hearing to review the plan

---

[6] We note Bullock did not challenge the restitution amount at the time of his resentencing in 2014. However, we address the merits of his request in light of his claim that the sentence imposed in 2002 was illegal because he believed it exceeded the then-applicable fee limitations established in Iowa Administrative Code r. 493-12.4 (1999). *See Tindell*, 629 N.W.2d at 359 (noting challenges to an illegal sentence can be made at any time without needing to first raise the issue in district court).

of restitution or the restitution plan of payment pursuant to Iowa Code section 910.7.

**AFFIRMED.**